UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| BRADY MICHEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:24-cv-00588-JMS-MKK |
| | ) | |
| PRETORIUS, *Warden*; | ) | |
| LOWDER, *Officer* | ) | |
| Defendants. | ) | |

## ORDER

Plaintiff Brady Michel is a prisoner at the Putnamville Correctional Facility. After a prison guard allegedly permitted unnamed inmates to roam the restricted area in which Mr. Michel was housed, those inmates assaulted him. Mr. Michel filed a Complaint alleging constitutional violations pursuant to 42 U.S.C. § 1983. [Filing No. 2.] Mr. Michel has filed a Motion to Amend his Complaint, which is granted. [Filing No. 12.] Because the plaintiff is a "prisoner," this Court must screen the Amended Complaint before service on the defendants. 28 U.S.C. § 1915A(a), (c).

## I.
### SCREENING STANDARD

When screening a complaint, the Court must dismiss any portion that is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To determine whether the complaint states a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Schillinger v. Kiley*, 954 F.3d 990, 993 (7th Cir. 2020). Under that standard, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

1

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court construes *pro se* complaints liberally and holds them to a "less stringent standard than pleadings drafted by lawyers." *Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017).

Despite this less-stringent pleading standard, the Court emphasizes that although the Federal Rules of Civil Procedure do "not require 'detailed factual allegations,'" "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 555. Indeed, while the Court "accept[s] the well-pleaded facts in the complaint as true, . . . legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 616).

## II.
### THE AMENDED COMPLAINT

Mr. Mead names the following Defendants: Officer Lowder, Warden Pretorius, Commissioner Arnold, and Duty Officer John or Jane Doe.

His factual allegations are accepted as true at the pleading stage. *See Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023).

On the evening of September 25, 2024, Officer Lowder "assumed unaccompanied command of dorm 13 South." ("Dorm 13S") [Filing No. 12-1 at 3.] Dorm 13S has "such a poor layout that only roughly 40% of the space and perhaps 25% of the inmates are visible in any one sightline." [Filing No. 12-1 at 3.] "The 13S command post does not permit or provide the dorms' correctional officer with video surveillance of the roughly 7,500 sq. ft. space." [Filing No. 12-1 at 7.] Dorm 13S has multiple "visual obstructions," including bunked beds in the middle of the room, that prevent clear visibility of inmate activity. [Filing No. 12-1 at 7.] "The safety of the inmates is generally left to the inmates themselves." [Filing No. 12-1 at 3.]

Around 8:30 PM, Officer Lowder "intentionally admitted two Caucasian males whom she was unsure of their housing arrangements. Dorm admission is not subject to visual inspection or confirmation." [Filing No. 12-1 at 3-4.] Those inmates "scouted and searched the dorm" for Mr. Michel, lied in wait where Officer Lowder had no view of them, and then physically assaulted Mr. Michel. [Filing No. 12-1 at 4.] "Approximately 2 1/2 minutes elapsed before [Officer] Lowder was in attendance of the critical incident and approximately 4 minutes before correction's officers arrived to subdue the perpetrators." [Filing No. 12-1 at 5.] Officer Lowder engaged the assaulting inmates "verbally only" and did not have the size or strength to personally intervene. [Filing No. 12-1 at 8.]

Mr. Lowder's Amended Complaint names Officer Lowder, Warden Pretorius, Indiana Department of Correction Commissioner Lloyd Arnold, and the unknown Duty Officer the night of the assault, labeled only as "John or Jane Doe." [Filing No. 12-1 at 1.]

## III.
### DISCUSSION OF CLAIMS

**A.  Officer Lowder**

The essence of Mr. Michel's claim against Officer Lowder is that she was deliberately indifferent in failing to prevent the attack and also in failing to promptly stop the attack after it began.

*1.  Eighth Amendment*

Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." *Farmer v. Brennan,* 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) (internal quotation omitted). In many scenarios, the Seventh Circuit has precluded liability against prison officials: To start, Officer Lowder cannot be liable for failing to personally break up the assault. Given the allegation that Officer Lowder did not have the size or

3

strength to intervene, "it would be entirely speculative for a jury to conclude that these actions would have stopped the assault or made any difference at all." *Davis v. Rook*, 107 F.4th 777, 782 (7th Cir. 2024). Nor can she be faulted for waiting for backup. The Seventh Circuit has "explained many times over that an officer may call for back-up before breaking up a fight." *Id.* (citing *Shields v. Dart*, 664 F.3d 178, 181 (7th Cir. 2011) and *Giles v. Tobeck*, 895 F.3d 510, 514 (7th Cir. 2018)). And the 4-minute delay in backup's arrival also does not impose liability. Even a "15 to 20 minute delay in arriving on the scene," though troubling, is "insufficient to constitute deliberate indifference." *Shields*, 664 F.3d at 181.

Permitting the assaulting inmates to roam the restricted area is potentially a different question. Although the Seventh Circuit has primarily "found deliberate indifference where custodians know of threats to a specific detainee posed by a specific source*,*" courts "have not been constrained by this fact pattern. It is well settled that deliberate indifference may be found though the specific identity of the ultimate assailant is not known in advance of assault." *Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005) (cited by *Sinn v. Lemmon*, 911 F.3d 412, 421 (7th Cir. 2018)).

The Seventh Circuit has permitted cases to proceed where the reason prisoners are separated is for security and a defendant allegedly permitted prisoners to interact regardless. *See, e.g.*, *Junior v. Anderson*, 724 F.3d 812, 816 (7th Cir. 2013) (reversing summary judgment and ruling in favor of prisoner where defendant officer allegedly permitted unauthorized prisoners to enter a common area, resulting in the plaintiff being stabbed); *Budz*, 398 F.3d at 908 (reversing dismissal and ruling in part in favor of detainee who alleged that detention facility "employees failed to protect him in violation of his due process rights by allowing [a] fellow [detainee] with allegedly violent propensities to roam [f]acility common areas unsupervised"); *Pavlick v. Mifflin*, 90 F.3d 205, 207 (7th Cir. 1996) (affirming jury verdict in favor of prisoner where defendant

officer personally unlocked the prisoner's cell door, leading attacking inmates to "rush[] into the cell" and stab the prisoner 21 times while he was asleep).

Mr. Michel has adequately pled that kind of deliberate indifference. The Court emphasizes that while Mr. Michel has stated a claim against Officer Lowder, he has done so only barely: the only reason his claim proceeds is that he alleges that Officer Lowder "intentionally permitted two [prisoners] access to a restricted area for purposes of assaulting" him. [Filing No. 12-1 at 13.] the Court infers from this allegation both that Officer Lowder intentionally allowed the attackers to enter and that she did so knowing they intended to attack Mr. Michel. Absent this allegation, he would not state a claim.

Mr. Michel is cautioned that Federal Rule of Civil Procedure 11 requires even an "unrepresented party" to have a good-faith basis for his claims, and that by filing his suit he "certifies that to the best of his knowledge," his "factual contentions have evidentiary support or . . . will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b). A failure to abide by Rule 11's mandate may result in sanctions. *Id.* (c); *see generally Wright v. Tackett*, 39 F.3d 155, 158 (7th Cir. 1994) (affirming sanctions against a pro se litigant).

An Eighth Amendment claim against Officer Lowder for being deliberately indifferent by intentionally permitting prisoners to enter a restricted area for purposes of harming Mr. Michel **shall proceed**.

2.   *Intentional Infliction of Emotional Distress*

To establish a claim for intentional infliction of emotional distress under Indiana law, a plaintiff must plead that a defendant: "(1) engaged in extreme and outrageous conduct, (2) which intentionally or recklessly, (3) caused, (4) severe emotional distress to another." *Rihm v. Hancock Cnty. Libr.*, 954 F. Supp. 2d 840, 858 (S.D. Ind. 2013).

5

Mr. Michel has adequately alleged these elements against Officer Lowder. Just as with Mr. Lowder's Eighth Amendment claim, the only reason Mr. Lowder's claim for intentional infliction of emotional distress proceeds is because of the allegation that she intentionally let the prisoners through for the purpose of the inmates harming him.

A claim for intentional infliction of emotional distress against Officer Lowder **shall proceed**.

### 3.     *Negligent Infliction of Emotional Distress*

"Indiana has allowed recovery for negligent infliction of emotional distress in those circumstances involving an impact to the plaintiff's person under what has been named the 'direct impact' rule or its progeny, the 'modified impact' rule.'" *Ketchmark v. N. Indiana Pub. Serv. Co.*, 818 N.E.2d 522, 523 (Ind. Ct. App. 2004). The Indiana Supreme Court has described the modified impact rule as follows:

> When . . . a plaintiff sustains a direct impact by the negligence of another and, by virtue of that direct involvement sustains emotional trauma which is serious in nature and of a kind and extent normally expected to occur in a reasonable person, we hold that such a plaintiff is entitled to maintain an action to recover for that emotional trauma without regard to whether the emotional trauma arises out of or accompanies any physical injury to the plaintiff.

*Shuamber v. Henderson*, 579 N.E.2d 453, 456 (Ind. 1991).

"[D]irect impact is properly understood as being 'physical' in nature." *Ross v. Chema*, 716 N.E.2d 435, 437 (Ind. 1999). "[I]t matters little how the physical impact occurs, so long as that impact arises from the plaintiff's direct involvement in the tortfeasor's negligent conduct." *Conder v. Wood*, 716 N.E.2d 432, 435 (Ind. 1999). In fact, there is "no requirement that the impact be initiated by the tortfeasor," so the impact can arise from someone or something else as long as the defendant was directly involved. *Id.* at 435 n.3.

6

Assuming the inmate assault was plausibly a direct impact from negligently permitting the inmates access to a restricted area, Mr. Michel has adequately alleged these elements against Officer Lowder under the modified impact rule. A claim for negligent infliction of emotional distress against Officer Lowder **shall proceed**.

### B. Duty Officer John or Jane Doe

Mr. Michel's claim against Officer Lowder proceeds only because of specific allegations of intentional purpose to harm him, but there is no similar allegation against Duty Officer John or Jane Doe for a claim of deliberate indifference. There is no characterization of what the Officer knew or of any specific outrageous conduct, and there is not enough factual basis against the Officer to support intentional infliction of emotional distress or negligent infliction of emotional distress. Mr. Michel provides only conclusory allegations.

Mr. Michel's claims against Duty Officer John or Jane Doe for Eighth Amendment deliberate indifference, intentional infliction of emotional distress, and negligent infliction of emotional distress **are dismissed**.

### C. Commissioner Arnold

Mr. Michel alleges that Commissioner Arnold permits the enforcement of a vague prison policy that provides inadequate guidance to officers attempting to prevent assaults and seeks to enjoin the policy as a violation of the Eighth Amendment.

Defendants "who are responsible for setting prison policy, can be held liable for a constitutional violation if they are aware of a systematic lapse in enforcement of a policy critical to ensuring inmate safety yet fail to enforce that policy." *Sinn*, 911 F.3d at 423 (internal quotation marks and citation omitted). The Seventh Circuit has typically dismissed cases where the "policymaking defendants . . . were alleged to have had knowledge of only general risks of violence

7

at their prison, as opposed to particular knowledge of a specific risk posed by, or to, a particular detainee." *Budz*, 398 F.3d at 910 (quoting *Weiss v. Cooley*, 230 F.3d 1027, 1033 (7th Cir. 2000)).

In this case, the Court must consider the allegedly inadequate policy in light of the actions of Officer Lowder and the unnamed Duty Officer. Mr. Michel complains that the policy facilitated the fact that Officer Lowder did not personally break up the attack, that she called for backup, and that backup took some time to arrive. But as the Court has explained, Officer Lowder cannot be held liable for any of those actions. For the same reasons that Mr. Michel has not stated a claim based on Officer Lowder's failure to break up the fight, he has not stated a claim based on his allegations that Commissioner Arnold had a policy which permitted such a response to an assault.[1]

Mr. Michel's Eighth Amendment claim against Commissioner Arnold **is dismissed**.

### D.     Warden Pretorius

Mr. Lowder alleges that multiple policy failures enabled his assault: he states that "[t]he ratio of 1 corrections officer to 130 inmates is insufficient by policy and inconsistent with common sense." [Filing No. 12-1 at 6.] He states that there is no procedure to "limit access to restricted areas by visual inspection and/or authentication." [Filing No. 12-1 at 13-14.] He states further that Officer Lowder did not have the proper training to deal with the situation and that the prison has inadequate hiring standards. [Filing No. 12-1 at 8-10.] He seeks an injunction against Warden Pretorius to prohibit Officer Lowder from working "in any command positions without further and additional training." [Filing No. 12-1 at 8-10.]

---

[1] The Court does not understand Mr. Michel to allege that Commissioner Arnold was responsible for the alleged Putnamville Correctional Facility policy that allowed Officer Lowder to permit the inmates on the unit in the first place. No such claim can therefore proceed against the Commissioner. *See Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) ("[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation.") (internal quotation omitted).

"[F]ailure to train claims are usually maintained against municipalities, not against individuals, and, in the Eighth Amendment context, such claims may only be maintained against a municipality." *Budz*, 398 F.3d at 909 (affirming dismissal of failure-to-train claim against civil commitment employees in their individual capacities). A supervisory defendant can be liable for failing to train correctional officials if the supervisor is aware of problems with training and that those issues would result in harm. See *Sinn,* 911 F.3d at 423. Because Mr. Michel makes only general allegations that the Defendants were aware of any lapses in training, he has not sufficiently stated that Warden Pretorius was specifically aware of a particular lapse in training and that such lapse could result in harm. See *Shachter v. City of Chicago*, 848 F. App'x 208, 210 (7th Cir. 2021) (a legal conclusion is insufficient to state a plausible claim). Further, because Mr. Michel's allegations against Officer Lowder state a claim solely on her individual intention and purpose, he does not state a claim for unlawfully inadequate hiring standards. Therefore, any Eighth Amendment claims against Warden Pretorius based on a failure-to-train and/or inadequate-hiring-standards theory **are dismissed**.[2]

The alleged policy of understaffing or non-policy of failing to screen incoming inmates is a different question. A plaintiff may allege "the specially tailored Eighth Amendment claim . . . where the evidence" could plausibly show a "serious security problem known by prison officials and a failure to institute screening procedures to protect the targeted group of prisoners from a real and significant risk of assault." *Langston v. Peters*, 100 F.3d 1235, 1239 (7th Cir. 1996). Mr.

---

[2] Mr. Michel claims in passing that the Defendants refused him mental health access, but he provides no specific allegation that any named defendant was personally involved his alleged deprivation. [Filing No. 12-1 at 18.] Any Eighth Amendment claim regarding his access to mental healthcare **is dismissed**. See *Gonzalez v. McHenry Cnty., Illinois*, 40 F.4th 824, 828 (7th Cir. 2022) (holding that "[l]awsuits against individuals require personal involvement in the constitutional deprivation to support a viable claim") (citation omitted).

9

Michel's allegation that understaffing in Dorm 13S and failing to screen incoming inmates contributed to his assault adequately alleges an Eighth Amendment claim against Warden Pretorius as a policymaker. *See, e.g.*, *Walsh v. Mellas*, 837 F.2d 789, 797 (7th Cir. 1988) (*Walsh II*) (reversing district court judgment and ruling in favor of prisoner where "a good faith screening procedure similar to the one utilized for the general population . . . would have helped insulate the defendants from a finding that the prison's classification and assignment procedures were unconstitutional"); *Madyun v. Thompson*, 657 F.2d 868, 874-75 & n. 9 (7th Cir. 1981) (reversing summary judgment against prisoner and evaluating under Rule 12(b)(6) the claims that "instances of overcrowding and understaffing at [the prison] have produced conditions which make it impossible for correction officers to protect weaker inmates from violence inflicted by other inmates," and extending the claim to cover allegation of "inadequate training for the women guards").

An Eighth Amendment claim against Warden Pretorius for policy failures for understaffing and/or failing to screen as contributing to Mr. Michel's assault **shall proceed**.

## IV.
### CONCLUSION

The Court **GRANTS** Mr. Michel's Motion to Amend Complaint, [12]. The **clerk is directed to** docket Mr. Michel's Proposed Amended Complaint, [12-1], separately as the Amended Complaint. The following claims **SHALL PROCEED** in this action:

- Officer Lowder
    - Eighth Amendment claim for deliberate indifference for intentionally permitting prisoners to enter a restricted area for the purpose of harming Mr. Michel.
    - Intentional infliction of emotional distress
    - Negligent infliction of emotional distress

- Warden Pretorius
    - Eighth Amendment claim that prison policy or procedures are insufficient to protect prisoners like Mr. Michel in Dorm 13S so as to be deliberately indifferent.

All other claims have been dismissed. If the plaintiff believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through July 28, 2025,** in which to file a motion to reconsider the screening order.

The **clerk is directed** pursuant to Fed. R. Civ. P. 4(c)(3) to issue process to Defendants Officer Lowder and Warden Pretorius, in the manner specified by Rule 4(d). Process shall consist of: (1) Mr. Michel's Amended Complaint, dkt. [12-1]; (2) applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons); and (3) this Order. The **clerk shall serve** the Indiana Department of Correction employees electronically.

The Indiana Department of Correction is **ORDERED** to provide the full name and last known home address of any defendant if she does not waive service if such information is available. This information shall be filed *ex parte*.

Nothing in this Order prohibits the filing of a proper motion pursuant to Federal Rule of Civil Procedure 12.

**IT IS SO ORDERED.**

Date: 7/2/2025

*[signature]*
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

BRADY MICHEL
300429
PUTNAMVILLE - CF
PUTNAMVILLE CORRECTIONAL FACILITY
Electronic Service Participant – Court Only


Electronic service to Indiana Department of Correction:

- Officer Lowder
- Warden Pretorius

(all at Putnamville Correctional Facility)